UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: SEARS HOLDINGS CORPORATION,
et al.,

                                        Debtors.

MOAC MALL HOLDINGS LLC,

                                        Appellant,                    No. 19 Civ. 09140 (CM)

        -against-

TRANSFORM HOLDCO LLC and
SEARS HOLDINGS CORPORATION, et al.

                                        Appellees.

---

**ORDER GRANTING TRANSFORM HOLDCO LLC'S MOTION FOR REHEARING,
AND ON REHEARING VACATING THE COURT'S ORIGINAL DECISION ON
APPEAL**

McMahon, C.J.:

        Appellant MOAC Mall Holdings LLC ("MOAC") took an appeal to this court from an

order of the United States Bankruptcy Court for the Southern District of New York (Drain, B.J.),

which approved the assignment and assumption of the certain lease (the "Lease") of the Sears store

at the Mall of America in Minneapolis, Minnesota to an entity known as Transform Leaseco LLC.[1]

The parties filed lengthy briefs discussing the complicated issue raised by the appeal; they held an

oral argument at which the court questioned them closely on contested points of law.

---

[1] Transform Leaseco LLC ("Leaseco") is wholly owned by Transform Holdco LLC ("Holdco"). They are represented
by the same counsel who have filed only one set of briefs and motions throughout the appeal. These two entities were
referred to as "Transform" throughout the appellate opinion. However, as a technical matter relevant to this opinion
on rehearing, it was Leaseco who was the designated assignee of the Sears lease, and Holdco who made the
designation, and it turns out to be necessary to refer to them as separate entities, rather than collectively as
"Transform," in critical portions of this opinion. Therefore, in this opinion references to "Transform" reflect arguments
made in the one set of papers filed on behalf of both Leaseco and Holdco.

At no point in this entire process – through briefing and oral argument – did either side suggest that the court might lack jurisdiction over the appeal. MOAC did not seek a stay pending appeal in this court, and Transform did not move to dismiss MOAC's appeal for want of jurisdiction. Everyone behaved as though that were a foregone conclusion.

It took several weeks of concentrated work to write the forty-three-page decision disposing of the appeal. In the end, the court vacated the order of the Bankruptcy Court, concluding that the assignment of the Mall of America Lease to Leaseco violated § 365(b)(3)(A) of the Bankruptcy Code.

Transform has not appealed that decision to the United States Court of Appeals for the Second Circuit. Instead, Transform filed the instant motion, in which is asserts for the first time – albeit on the basis of facts known to it throughout the pendency of the appeal, but never revealed to this court – that this court lacked jurisdiction over the appeal all along, because the order appealed from was not stayed pending appeal.

Ordinarily, the failure to raise a known argument while a case is under adjudication precludes the granting of a motion for rehearing/reargument. *In re Soundview Elite Ltd.*, No. 14-cv-7666, 2015 WL 1642986, at *1 (S.D.N.Y. Apr. 13, 2015), *aff'd*, 646 F. App'x 1 (2d Cir. 2016). As Transform did not raise the appellate implications of Judge Drain's denial of MOAC's motion for a stay pending appeal under § 363(m) of the Bankruptcy Code, under the traditional rules applicable to such motions, its motion for rehearing would be summarily denied.

Transform insists, however, that the court must entertain the motion, because the issue it raises is both "jurisdictional" – that is, it goes to the court's power to hear the appeal in the first instance – and nonwaivable. Transform also argues that it cannot be estopped to raise the issue of the court's jurisdiction belatedly, even though – as I now know – its counsel flatly stated to the

bankruptcy judge that § 363(m) had no applicability to the assignment of the Mall of America Lease to Leaseco, *and that Transform did not intend to argue otherwise*, in order to induce him to deny MOAC's motion for a stay.

Transform's motion for rehearing is granted. The court has examined its appellate jurisdiction for the first time. Having done so, I conclude, with great regret, that this court lacked the power to hear and decide MOAC's appeal.

The decision on appeal is vacated, and MOAC's appeal is dismissed as statutorily moot.

## BACKGROUND

*The Original Sale Order and the Asset Purchase Agreement*

Though I have no wish to rehash details discussed in the opinion I am now vacating, Transform's latest gambit needs to be contextualized.

Sears, Roebuck and Co. ("Sears"), Sears Holdings Corporation and its affiliated debtors (collectively, the "Debtors") filed for bankruptcy in October 2018. Former Sears executives formed Transform – a group of entities including, for our purposes, a parent company known as Holdco and an affiliate called Leaseco – to try to recapture and market Sears' assets. Transform, through the vehicle Holdco, submitted the best bid to purchase substantially all of Sears' assets.

The Debtors and Holdco entered into an Asset Purchase Agreement (the "APA") to memorialize Holdco's purchase. Pursuant to the APA, Holdco paid Sears over $1.4 billion to purchase all of Sears' assets, properties and rights related to its business,[2] which included all of the following:

- Assigned Agreements and the Designation Rights
- Lease Rights
- Owned real property
- Inventory, receivables, equipment and improvements

---

[2] Property excluded from the asset sale is not relevant to this appeal and rehearing motion.

- Intellectual Property
- Goodwill
- Data
- Books and records
- Marketing materials (including Sears iconic catalogs, its original marketing innovation)
- Claims
- Actions
- Contracts related to the business
- Store cash

In February 2019, the Bankruptcy Court approved the APA in a § 363(b) sale order (the "Sale Order"). (Bankr. Dkt. No. 2507, APX87.)[3] In the Sale Order, the Bankruptcy Court held that Holdco had purchased Sears' assets for "fair consideration." (*Id.* at 7, ¶ J.)

Among the bundle of assets purchased by Transform pursuant to the APA were (1) certain specifically Assigned Agreements, and (2) Designation Rights for contracts identified as "Designatable Leases." (*Id.* at 3.) "Designation Rights" are the right to designate to whom a lease between Sears (or an affiliate, such as Kmart) and some landlord should be assigned. Because Holdco had purchased Designation Rights, once it identified an assignee, Sears was required, per the terms of the APA, to assign the lease to Holdco's chosen assignee, as long as Holdco satisfied certain conditions that were specified in the APA. ("APA," Ex. B. to the Sale Order, APX184, as amended by Ex. F to Bankr. Dkt. No. 2599, APX3593, at § 2.6.)

All told, there were hundreds of "Designatable Leases," one of which was Sears' lease at the Mall of America in Minneapolis. As this court noted in the decision on appeal, Transform intended to continue to operate about 425 of those properties as Sears or Kmart stores. It planned to use its Designation Rights to bring about the assignment of the rest of the Designatable Leases

---

[3] "Bankr. Dkt." refers to the proceedings before Judge Drain in *In re Sears Holdings Corp., et al.*, No. 18-23538 (RDD) (Bankr. S.D.N.Y) and "APX" refers to the record on appeal to this court.

to itself (through an affiliate, such as Transform Leaseco), and then to sublease the spaces covered by those leases to new tenants at what it hoped would be a handsome profit.

Pursuant to § 2.6 of the APA, Transform Holdco purchased the Designation Rights for all Designatable Leases on the closing date. (*Id.*) Its right to designate assignees under the leases vested at the closing of the APA. (*Id.* at §§ 2.6, 5.2(a).) But the APA made clear, "For the avoidance of doubt, the sale . . . of the Designation Rights provided for herein on the Closing Date *shall not effectuate a sale, transfer, assignment or conveyance of any Designatable Lease to Buyer [Holdco] or any other Assignee . . . .*" (*Id.* at § 2.6 (emphasis added).)  Any such "sale, transfer, assignment or conveyance" would only occur on something called the "Designation Assignment Date" – defined in the APA as the date of the "sale, transfer, assignment, conveyance and delivery" of the designated lease by Sears to Holdco's designee. (*See id.* at §§ 2.6, 5.2(d).)  The APA also set out precisely when and how Sears' interest in any individual Sears would pass to Holdco's designee:

> On each Assumption Effective Date,[4] pursuant to section 365 of the Bankruptcy Code and the Approval Order, Sellers shall assume and assign to the applicable Assignee any Designatable Lease so designated by Buyer for assumption and assignment in accordance with the terms of this Agreement, and Buyer shall pay all or be responsible for Cure Costs with respect to such Designatable Leases.

(*Id.* § 2.7(c).)

Certain leases were assigned to Holdco as designee simultaneously with the closing of the APA and Holdco's acquisition of Designation Rights. (*See id.* § 2.7(b).) Those leases are listed in Exhibit A to the Sale Order. (APX170.) The Mall of America-Sears Lease that was the subject of the appeal to this court is not one of those leases.

---

[4] With respect to designatable leases to which objections to designation were lodged – such as the lease before this court – this date is defined as "the fifth (5th) Business Day following the date of resolution of any objection to assumption and assignment of such Lease." (*Id.* § 1.1.) In the case of the Mall of America Lease, the Designation Assignment Date and the Assumption Effective Date were the same day.

*The Subsequent Designation of the Mall of America Lease, The Objection, and The Appeal*

On April 2, 2019, Judge Drain entered an order establishing a procedure for Holdco to designate additional contracts for assumption and assignment to its desired assignees. (Bankr. Dkt. No. 3008, APX1290.) Once Holdco identified an additional lease to be designated for assumption and assignment, the Debtors were to file a notice with the court. Any party objecting to such an assignment had to serve and file a written objection with the Bankruptcy Court eight days after the filing of (i) the notice, or (ii) evidence of adequate assurance of future performance pursuant to 11 U.S.C. § 365(b)(3) – whichever was later.  (*Id.*)

Two weeks later, on April 19, 2019, Holdco filed a notice of "additional designatable leases" for assignment to itself or an affiliated entity (the "Notice"). (Bankr. Dkt. No. 3298, APX1331.) Among the additional designated leases was the Mall of America Lease. Holdco designated its affiliate, Leaseco, as the assignee of that particular lease.

MOAC objected to the Notice on the ground, among others, that the Debtors had not demonstrated that Leaseco met the qualifications for assignment of a shopping center lease as set forth in § 365(b)(3). (Bankr. Dkt. No. 3501, APX1344.) Over the course of the next few months, MOAC filed supplemental objections to the designation. Many other  parties also filed objections to other lease assignments proposed in the April 19 Notice; all such objections except MOAC's were resolved.

As one might surmise from the name of Holdco's designee, the Mall of America Lease was intended to be marketed to a new tenant or tenants not yet identified. The parties stipulated that Holdco had no intention of operating a Sears store at the Mall of America, but rather intended to sublease the premises to a third-party tenant at a profit to Transform. (Bankr. Dkt. No. 4865 ¶¶ 11-14, APX1783.) In fact, this was MOAC's major motivation for fighting the assignment – it did not

want to see Sears' anchor tenant space divided or occupied by whoever would pay Transform the highest price. MOAC wanted another big box retailer to take over the space – even if it (like Sears) paid little or no rent – both to "preserve the character" of Mall of America (a concept discussed at length in this court's opinion disposing of the appeal) and to ward off the possibility that MOAC might find itself in default on co-tenancy provisions in the leases of other Mall tenants.

Judge Drain conducted an evidentiary hearing on MOAC's objections on August 23, 2019. At that hearing, Leaseco – the proposed assignee – presented evidence that it met the requirements of § 365(b)(3)(A)-(D), as required by law and by the APA. It also offered two additional "concessions" that were intended to assuage MOAC's objections. It agreed (i) to put $1.1 million (effectively one year's rent, which the assignee would have had to pay in any event) into escrow; and (ii) to guarantee that it would sublet at least portion of the premises within two years. Leaseco also expressly agreed to operate in full compliance with the Lease (including the "Uses" section of the Lease and the REA), and to honor MOAC's buy-back rights under Article 6.3 of the Lease.

At the conclusion of the hearing, the Bankruptcy Court overruled MOAC's objections in an oral opinion read into the record. On September 5, Judge Drain signed a final order (the "Assignment Order") authorizing the assumption and assignment of the Mall of America Lease to Leaseco. (Bankr. Dkt. No. 5074, APX1947.) In that order, the Bankruptcy Court found that Leaseco met all the requirements for assignment of a shopping center lease, as set forth in 11 U.S.C. § 365. The Assignment Order imposed on Leaseco, as a condition of the assignment, the obligation to undertake the concessions it had offered during the hearing, and specifically ordered Leaseco to comply with the "Uses" section and to honor MOAC's buy-back rights.

The Assignment Order is the official bankruptcy court order by which the objections to the assignment were resolved. It is the order from which an appeal was taken to this court – the appeal that was disposed of by this court's decision dated February 27, 2020. (Dkt. No. 26.)

*The Stay Proceedings*

MOAC moved to stay the Assignment Order pending appeal on September 6, the day after it was filed. (Bankr. Dkt. No. 5083, Ex. A. to "Reh'g Resp.," Dkt. No. 33; Bankr. Dkt. No. 5110.) On September 18, Judge Drain held a hearing on MOAC's stay motion. (*See* "Stay Tr.," Bankr. Dkt. No. 5413; Ex. A to "Mot. for Reh'g," Dkt. No. 29-1.)

MOAC argued that, in light of 11 U.S.C. § 363(m), it needed a stay in order to protect its right to appellate review of the Bankruptcy Court's September 5 Assignment Order. That section of the Code provided as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

The Bankruptcy Court was skeptical that any stay was necessary. While noting that the assignment was being made in accordance with the original § 363 Sale Order, Judge Drain said, "I can't imagine 363(m) as far as the sale is concerned applying here." (Stay Tr. at 8:4-5.) He reasoned that MOAC was appealing the Assignment Order only insofar as it related to only one of the roughly 600 Sears leases Holdco had the right to designate throughout the bankruptcy proceeding, while the authorization for the transfer of property that was the subject of the Sale Order – the sale of the Designation Rights – applied to all the leases. (*Id.*)

While it was in the happy position of having prevailed in the Bankruptcy Court, Transform agreed that no stay was necessary. At the stay hearing, counsel for Transform represented to the

Bankruptcy Court that § 363(m) did not apply to MOAC's challenge to the Assignment Order. He stated, "in effect, because we do not have a transaction, I think we couldn't rely on 363(m) for the purposes of arguing mootness *because we have not closed on a transaction to assume and assign this to a sub-debtor* [sic]." (*Id.* at 8:14-18 (emphasis added).)[5] In other words, Transform argued to the Bankruptcy Court that an assignment to an intermediary entity such as Leaseco, without a subsequence transfer to some as-yet unidentified third party or parties that would occupy the Sears space, was not a § 363(b) or (c) "sale or lease" for the purposes of § 363(m).

The Bankruptcy Court ultimately concluded that no stay was necessary to preserve MOAC's right to appeal, finding, "This is not -- this is a 365 order. It's an outgrowth of the sale. It's not a 363(m), *and they're not going to rely on 363(m),* which [Transform's counsel]'s just reiterated for the second time." (*Id.* at 9:23-25, 10:1 (emphasis added).) Judge Drain believed that the only "sale or lease of property" that was authorized pursuant to § 363(b) or (c) – which is a prerequisite for the applicability of § 363(m) – was the sale of Sears' assets (including the specific leases assigned directly to Holdco and the right to designate assignees for additional but as-yet-unidentified "designatable" leases), as memorialized in the original Sale Order. He also plainly relied on Transform's representation that § 363(m) would not moot the appeal in the absence of a stay when he rejected MOAC's principal argument for irreparable harm and concluded that it had not made a substantial showing of the need for a stay on the merits. In response to MOAC's concern that the district court might independently deem the appeal moot, Judge Drain stated that Transform would be estopped from so arguing. (*Id.* at 10:2-16.)

On September 27, Judge Drain entered an order denying MOAC's stay motion. (Bankr. Dkt. No. 5246.) The order clearly stated that the Assignment Order was "immediately enforceable

---

[5] As the parties were discussing the subleasing of the Sears premises at Mall of America, Transform's counsel must have said "sublettor," which was mistranscribed as "subdebtor."

and effective as of its entry on September 5, 2019." (*Id.*) Per the terms of the APA and the Assignment Order, the transaction closed five business days later, and the Mall of America Lease was assumed by Sears and then assigned to Leaseco.

       *Proceedings in the District Court*

       On October 2, MOAC filed the instant appeal, challenging the Assignment Order under § 365. (Dkt. No. 1.) At the September 18 hearing before the Bankruptcy Court, MOAC had reserved its right to seek leave for a stay in the event "equitable mootness" became an issue (Stay Tr. at 10:20-25, 11:1-7),[6] but it neither appealed from Judge Drain's order denying a stay pending appeal nor sought a stay pending appeal from this court. I have little doubt this was because Transform had represented to Judge Drain that the appeal would not be moot under § 363(m).

       As a result, this court – which does not pretend to expertise in bankruptcy law – was unaware of the possibility that the appeal might be moot because of Judge Drain's refusal to enter a stay pending appeal. I read the briefs and the record; I heard oral argument; and I worked for over a month on what turned out to be a very complicated appeal, relying on the arguments raised by the parties.

       Ultimately, this court concluded that the Bankruptcy Court had erred in finding that Transform satisfied § 365(b)(3)(A) – a section of the Code that requires, in connection with the assignment of a lease for premises in a shopping center, that the proposed assignee's financial condition and operating performance be similar to the financial condition and operating performance of the debtor at the time the debtor became the lessee under the lease. The bankruptcy

---

[6] Equitable mootness is a prudential doctrine whereby district courts may dismiss a bankruptcy appeal as moot when effective relief would be inequitable. This doctrine applies to avoid unraveling underlying plans that have been substantially consummated. Here, Transform has not argued for equitable mootness; it only argues for statutory mootness. Moreover, to the extent the doctrine may apply to Transform's consummation of its plan to sublease the Mall of America Lease to an actual tenant, based on a stipulation entered in this court – *see infra.*, at page 11 – it can do no such thing.

judge had expressly found that Leaseco's financial condition and operating performance were not similar to that of Sears when its Mall of America lease commenced back in 1991. In light of that finding (which was amply supported by the record), this court did not believe that any judicially-created performance guarantees, such as those sanctioned by the Bankruptcy Court[7] could be substituted for the standard expressly written into law by Congress.

As a result, this court vacated the Assignment Order to the extent it had authorized the assumption and assignment of the Sears Lease to Leaseco – i.e., it modified the Assignment Order – and remanded the case to the Bankruptcy Court. (Dkt. No. 26); *In re Sears Holdings Corp.*, 613 B.R. 51 (S.D.N.Y. 2020).

Subsequently, this Court so-ordered a stipulation between the parties that allowed both parties to market the Lease pending further appeal, but forbade either party from entering into any sublease or similar agreement for the Sears space. (Dkt. No. 28.)

The following day, Transform filed the instant motion for rehearing, arguing for the first time that this Court lacked appellate jurisdiction over MOAC's appeal under 11 U.S.C. § 363(m), because MOAC had not obtained a stay of the Assignment Order. (Dkt. No. 29.)

**ANALYSIS**

Transform moves for rehearing pursuant to Bankruptcy Rule 8022. "The standard for granting such a motion, derived from Rule 40 of the Federal Rules of Appellate Procedure, requires the movant to state with particularity each point of law or fact that the movant believes the district court or BAP has "overlooked or misapprehended." *Soundview Elite*, 2015 WL 1642986, at *1

---

[7] The Bankruptcy Court concluded that Transform/Leaseco did not have to abide by the literal terms of § 365(b)(3)(A) because (i) it seemed (by virtue of its fundraising capabilities) to have a net worth of at least $50 million (the justification for that number is explained in the opinion on the appeal), and (ii) it had agreed to abide by all terms of the Lease. This court concluded that things could not be substituted for the very different requirements set forth in the statute.

(internal quotations and citations omitted). This strict standard does not allow the movant to reargue its case, but rather is intended to "direct the court's attention to a material matter of law or fact which it has overlooked in deciding the case, and which, had it been given consideration, would probably have brought about a different result." *Id.*

This court has admitted complete unawareness of the possibility that the appeal it so laboriously considered and decided might well be moot. I cannot say that I "overlooked" the issue, because both sides were aware that 11 U.S.C. § 363(m) had been raised in the Bankruptcy Court, but neither side called it to my attention during the pendency of the appeal. I would certainly not have "overlooked" this issue if it had been raised, since lack of appellate jurisdiction would have foreclosed me from deciding the appeal as argued (not to mention, saved me a great deal of work). I would instead have been limited me to whether Leaseco's assumption of the lease in the absence of a stay was done "in good faith" – an issue not briefed or argued to this court.  That certainly would have "brought about a different result" on the appeal.

Having lost on the appeal, Transform has apparently thought better of the position it took before Judge Drain. It now argues that § 363(m) renders MOAC's appeal of the unstayed Assignment Order moot, thus precluding appellate review by this court.

MOAC responds that Transform has waived any rights it might have had under § 363(m) and is judicially estopped from relying on any protection the statute might otherwise have afforded it. MOAC also argues that Transform was correct when it represented to Judge Drain that § 363(m) did not apply to the Assignment Order.[8]

After deliberation, I must reject MOAC's arguments. Because the Second Circuit takes the position that § 363(m) is "jurisdictional," neither waiver nor judicial estoppel can be relied on to

---

[8] I am not insensible to the fact that MOAC took exactly the opposite position when it moved before Judge Drain for a stay pending appeal.

overcome it. And, regrettably, § 363(m) does protect the assignment of the Mall of America Lease from appellate review in the absence of a stay, because the assignment of that lease was a "sale" within the meaning of that section.

Accordingly, MOAC's appeal is, and always was, statutorily moot.

I.      **Because Section 363(m) is "Jurisdictional," Waiver and Estoppel Cannot Be Relied On to Create Appellate Jurisdiction Where None Exists.**

District courts have jurisdiction to hear bankruptcy appeals pursuant to 28 U.S.C. § 158. However, § 363(m) imposes a limitation on the exercise of that jurisdiction:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363.

The Second Circuit has "held in no ambiguous terms that section 363(m) *is a limit on our jurisdiction* and that, absent an entry of a stay of the Sale Order, we only retain authority to review challenges to the 'good faith' aspect of the sale. Specifically, we held in *Gucci I* that we *lack jurisdiction* to review the 'unstayed *sale order*,' of a sale subject to the protections of section 363(m) and concluded that 'we may neither reverse *nor modify* the judicially-authorized sale.'" *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 248 (2d Cir. 2010) (emphasis added) (quoting *In re Gucci*, 105 F.3d 837, 838–840 (2d Cir. 1997)). Moreover, the statute makes it plain that knowledge of the pendency of an appeal does not in and of itself constitute "bad faith." Whether Transform's behavior before the Bankruptcy Court would qualify as bad faith is not a question that anyone has suggested I answer; it was certainly not raised on the appeal.

The Court of Appeals in *WestPoint* left open the possibility for, "A narrow exception . . . for challenges to the Sale Order that are so divorced from the overall transaction that

the challenged provision would have affected none of the considerations on which the purchaser relied." *Id.* at 249. No one has pointed this court to any case in which such an exception has been found.

MOAC nonetheless insists that Transform's representations to the bankruptcy judge render the appeal not moot under the doctrines of waiver and judicial estoppel. While this court is appalled by Transform's behavior, I must disagree that either doctrine confers jurisdiction over an appeal where Congress has expressly removed it.

*Waiver*

MOAC contends that § 363(m) should be treated like any other statute, such that a party can knowingly waive its protection. Transform's counsel's representation to the Bankruptcy Court that the statute was inapplicable, and that Transform could not and would not rely on § 363, was, MOAC contends, a waiver of Transform's right to rely on the statute.

While waiver and forfeiture are applicable to many procedural conditions – for example, the "final decision" requirement for appeals, Title VII's exhaustion requirement, and the forum defendant rule in diversity cases, *see Williams v. KFC Nat. Mgmt. Co.*, 391 F.3d 411, 416 n.1 (2d Cir. 2004) (collecting cases)[9] – they cannot be relied on to create appellate jurisdiction where there is none. Given the Second Circuit's recognition of a clear distinction between limits on jurisdiction and waivable procedural conditions, I find it difficult to believe that the Court of Appeals would deem a statutory requirement to be "jurisdictional" – that is, one conferring or denying jurisdiction – and yet conclude that jurisdiction could attach via waiver, which is tantamount to by consent of

---

[9] Recently, the Second Circuit determined in *In re Indu Craft, Inc.*, 749 F.3d 107, 113, 116 (2d Cir. 2014) that Rule 6(b)(1) of the Federal Rules of Appellate Procedure (Appeal in a Bankruptcy Case) "is a nonjurisdictional rule" subject to waiver and forfeiture, emphasizing the difference between court-promulgated rules and jurisdictional limits enacted by Congress.

the parties. If § 363(m) is a jurisdiction-depriving statute, then its requirements cannot be waived;

"Parties cannot waive a defect in the Court's appellate jurisdiction." *In re Bucurescu*, 282 B.R.

124, 130 n.19 (S.D.N.Y. 2002) (citing *Kamerling v. Massanari*, 295 F.3d 206, 212–13 (2d Cir.

2002); *Goldberg v. Cablevision Sys. Corp.*, 261 F.3d 318, 323 (2d Cir. 2001)).

Of course, the language of the statute does not exactly suggest that an appellate court lacks

the power to reverse or modify an unstayed bankruptcy court order (it does, after all, presume that

a district or appellate court has entered just such an order). But it does say that any such order will,

in the absence of bad faith, be ineffective to undo a sale or lease already consummated in the

absence of a stay. This, of course, means that an appellate court cannot fashion effective relief in

the absence of a stay, which is what renders the appeal moot. Such "statutory" or "bankruptcy"

mootness "furthers the policy of finality in bankruptcy sales and assists the bankruptcy court to

secure the best price for the debtor's assets." *Gucci*, 105 F.3d at 840 (citing *United States v.

Salerno*, 932 F.2d 117, 123 (2d Cir. 1991)). As explained by the Sixth Circuit, § 363(m):

> reflects the more general constitutional consideration that an appeal must be
> dismissed as moot when, by virtue of intervening events, the court of appeals cannot
> fashion effective relief. Though reflective of the general prohibition against
> advisory opinions undergirding the constitutional mootness doctrine, bankruptcy
> mootness under § 363(m) is broader. Even if the appeal is not moot as a
> constitutional matter because a court could provide a remedy, the policy favoring
> finality in bankruptcy sales reflected in § 363(m) requires that certain appeals
> nonetheless be treated as moot absent a stay.

*Weingarten Nostat, Inc. v. Serv. Merch. Co.*, 396 F.3d 737, 742 (6th Cir. 2005) (internal citations

omitted).

The Second Circuit has quite clearly interpreted § 363(m) as a jurisdiction-depriving statute

– that is, a statute that removes the appellate court's power to decide any issue except the issue of

bad faith. I sit as a district court in the Second Circuit, so I am constrained by the words used by

my Court of Appeals to describe my power. And if I lack all power to grant effective relief by

congressional command, the parties are not free to agree otherwise, whether by consent or by waiver.

Significantly, MOAC calls the court's attention to no case in which an appellate court's order overturning an unstayed and fully consummated Bankruptcy Court order authorizing a § 363 sale was deemed effective by virtue of waiver. In the only case it cites, *In re Paige*, 443 B.R. 878, 908 (D. Utah 2011), *aff'd in part, rev'd in part*, 685 F.3d 1160 (10th Cir. 2012), the district court considered the possibility that § 363(m) could be waived, but ultimately rejected the proposition that any waiver occurred. *See id.*

*Estoppel*

With respect to estoppel, MOAC argues that, at the stay hearing, Judge Drain relied on Transform's representations that § 363(m) would not moot MOAC's appeal, which led him to conclude that MOAC would not suffer irreparable harm if he denied the stay. Now Transform seeks to benefit from a complete reversal of that representation.

Judicial estoppel is an equitable doctrine to be exercised in the sound discretion of the Court. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). It is "designed to prevent a party who plays fast and loose with the courts from gaining unfair advantage through the deliberate adoption of inconsistent positions." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 89 (2d Cir. 2000). Judicial estoppel typically applies when "1) a party's later position is 'clearly inconsistent' with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." *In re Adelphia Recovery Tr.*, 634 F.3d 678, 695–96 (2d Cir. 2011). The Second Circuit has "further limit[ed] judicial estoppel to situations where the risk of

inconsistent results with its impact on judicial integrity is certain." *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (internal citations omitted).

All the conditions for application of judicial estoppel would seem to be met here. Transform has taken different positions that are clearly inconsistent. Judge Drain plainly relied on Transform's representations – both that § 363(m) did not apply to this situation and that Transform had no intention of arguing otherwise – when he concluded that MOAC had failed to demonstrate that it would suffer irreparable injury in the absence of a stay. In response to Judge Drain's question, "So you're not relying on -- you  wouldn't -- you're not going to go to the district and say 363(m) applies here. This is over," Transform's counsel replied:

> MR CHESLEY: "Well, we -- in effect, because we do not have a transaction, I think we couldn't rely on 363(m) for the purposes of arguing mootness because we have not closed on a transaction to assume and assign this to a sub debtor [sic].
>
> THE COURT: The specific assign.
>
> MR. CHESLEY: Correct, Your Honor."

(Stay Tr. at 8:11-20.) Judge Drain then reiterated his understanding of Transform's comments: "It's not a 363(m), and they're not going to rely on 363(m), which Mr. Chesley's just reiterated for the second time." (*Id.* at 9:24-25, 10:1.)

Finally, Transform has derived an unfair advantage from its switch in position, because MOAC appears to have been lulled into not seeking a stay before this court.

The question is whether that gets MOAC past § 363(m).

Although the Second Circuit has "never held . . . that judicial estoppel can never apply to matters affecting subject matter jurisdiction," it has cautioned that "'special care' should be taken in considering whether judicial estoppel should apply 'to matters affecting federal subject matter jurisdiction.'" *Intellivision*, 484 F. App'x at 621 (quoting *Wight*, 219 F.3d at 89). This special care

is warranted because, "It is axiomatic that a *lack of subject matter jurisdiction may be raised at any time* even by a party who originally asserted jurisdiction." *Wight*, 219 F.3d at 90 (emphasis added) (internal quotation and citations omitted). Although Transform represented that it could not and would not rely on § 363(m), when it comes to "jurisdictional" considerations, "The bottom line is that irrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits." *Id.*

Moreover, as a bankruptcy judge in this district recently pointed out, "Judicial estoppel applies to inconsistent factual positions, not alternative legal theories of the case." *In re DeFlora Lake Dev. Assocs., Inc.*, 571 B.R. 587, 599 (Bankr. S.D.N.Y. 2017). Transform's representation to Judge Drain that § 363(m) did not apply to the instant appeal, because there had not yet been a "sale" of Sears' Mall of America Lease as that term is used in § 363(m) is at best a mixed question of law and fact, if not a pure question of law.  The assertion that a particular statute does not apply to undisputed facts is not, it seems to me, an "inconsistent factual position" – it is an inconsistent legal position.

Therefore, as much as I hate to say it, judicial estoppel appears to me inapplicable. And I do hate to say it, for if ever there were an appropriate situation for the application of judicial estoppel, this would be it.

## II. *Weingarten* is not Outcome Determinative.

Transform argues that the Sixth Circuit's opinion in *Weingarten Nostat, Inc. v. Service Merchandise Co.*, 396 F.3d 737 (6th Cir. 2005) compels the conclusion that MOAC's appeal is mooted by the absence of a stay of the Assignment Order. (*See* Mot. for Reh'g at 5.)

*Weingarten* is the only case known to this court in which the assignment of a lease pursuant to designation rights was deemed a protected transaction under § 363(m). Its facts are so nearly

identical to those in this case as to render it deceptively appealing as a precedent. But I do not believe that it controls the outcome of this motion – and not simply because it was decided in a different circuit.

In *Weingarten*, the debtor, Service Merchandise, sold the designation rights to most of its real property and retail leases to KLA (the equivalent of Holdco) for $116.4 million. *See* 396 F.3d at 739. KLA's parent corporation, Kimco, then partnered with Schottenstein Stores Corporation to form an entity known as JLPK (the Leaseco equivalent), which was designated by KLA as the assignee of the Service Merchandise lease in a mall known as Argyle Village Square Shopping Center. *See id.* at 739, n. 1. JLPK, like Leaseco, had no intention of operating a business on the site; it intended to sublease the space. The difference between that case and ours is that, in *Weingarten*, the sublessees had already been identified and the premises were to be subleased at roughly the same time as the assignment. *See id.* at 739–40.

Weingarten, the landlord at Argyle Village, objected to both prongs of the transaction. It objected to the assignment to JLPK, because JLPK did not meet the "similarity" requirements required by § 365(b)(3)(A). And it objected to the sublease of a portion of the premises to Michaels, an arts and crafts store, because having Michaels in the mall would both (i) place Weingarten in breach of its lease with Jo-Ann's, a competing crafts store, in violation of § 365(b)(3)(C), and (ii) disrupt the tenant mix or balance of Argyle Village under § 365(b)(3)(D). *See id.* at 740.

After first siding with the landlord – ironically, on the very ground on which MOAC prevailed in this court on the appeal (namely, that JLPK, the intermediate assignee did not meet the similarity in "financial condition and operating performance" criteria of § 365(b)(3)(A)) – the Bankruptcy Court reversed field and approved the transaction, pursuant to both §§ 363 and 365. It

did so after Kimco and Schottenstein's – neither of whom was ever the assignee of Service Merchandise's lease – agreed to guarantee a year's base rent on the leased premises.

Weingarten "vigorously" sought a stay pending appeal, from both the district court and the Sixth Circuit. However, its many applications were denied, and the transactions closed. Although the aggrieved landlord pursued its appeal in the absence of a stay, the Sixth Circuit dismissed Weingarten's appeal as moot under § 363(m). It reasoned that (1) lease assignments for consideration were "sales" within the meaning of that statute; and (2) the two-part transaction in question was actually a single transaction, pursuant to which Service Merchandise had "sold" its lease to the ultimate subtenant, Michaels. *See id.* at 742–43.

There are two important factual distinctions between this case and *Weingarten*.

First, as MOAC correctly points out, in *Weingarten* "the assignee paid *separate consideration* for the assignment." (Reh'g Resp. at 16 (emphasis added).) JLPK, the party in Leaseco's position in the *Weingarten* transaction, paid $300,000 in order to be designated as the assignee of the lease. *See* 396 F.3d at 743. Of course, JLPK paid that money to its affiliate, KLA – not to Service Merchandise's bankruptcy estate. But at least it paid something to someone in the transactional chain. There is no suggestion in the record before me that Leaseco paid anything to anyone who controlled the Lease – not to Sears, the assignor; not to Holdco, the designator; and not to ESL Investments, Inc., their mutual parent – in order to procure the assignment of the Mall of America Lease from Sears. But for reasons discussed below, I think this first factual distinction irrelevant.

It is the second reason that causes me to conclude that the Sixth Circuit's opinion, while interesting and informative, does not necessarily control the outcome of Transform's motion. The *Weingarten* court ultimately blessed the transaction because the assignment to intermediate

assignee JLPK (the party in Leaseco's shoes) was but the first half of a two-step but ultimately unitary transaction, whereby Service Merchandise (the debtor) assigned (sold) its lease to the ultimate subtenant, Michaels. To the Sixth Circuit, that was a critically important factor – one that caused it to "discount" the intermediate assignment to JLPK, and overlook Weingarten's argument that JLPK did not meet the requirements of § 365(b)(3)(A):

> Service Merchandise's assignment of the lease to JLPK pursuant to the designation-of-rights agreement with KLA constitutes a single transaction *if we consider the overall result of the transaction.* If the details of the transaction are discounted, it is clear that *Service Merchandise sold the Argyle Village lease to Michaels* pursuant to §§ 363(b) and 365. The relevant case law demonstrates that *a stay pending appeal is required when the sale and assignment are part of a single transaction,* and there is no reason that this protection should be lost merely because the transaction has been separated into two steps.

*Id.* (emphasis added).

In our case, we have no second step – none has occurred, and none is anticipated in the foreseeable future. No ultimate subtenant had been identified at the time the Assignment Order was approved and entered; none has been identified to date. That this made a difference to the outcome below could not be clearer; Transform's counsel represented to Judge Drain that the absence of a second-step transaction took the assignment of Sears' Mall of America lease to Leaseco out of the purview of § 363(m). (*See* Stay Tr. at 8:14-18.) Put otherwise, Transform essentially argued to Judge Drain that *Weingarten* did not preclude MOAC's appeal.

Because the Sixth Circuit's "unitary transaction" analysis ultimately dictated the outcome in *Weingarten*, I cannot accept  Transform's invitation to hold that *Weingarten* is outcome-determinative here, or to conclude that its reasoning would necessarily apply to the intermediate step in a two-step transaction in a case, like this one, where the assignee has not closed on the ultimate sublease.

If Transform is to prevail, it must be because the intermediate step, the assignment of the lease from Sears to Leaseco, was a "sale" within the meaning of § 363(m) – an issue never discussed by the Sixth Circuit in *Weingarten*. It is to that issue that I now turn.

### III.   The Assignment Order is Protected by § 363(m).

Section 363(m) applies to the "sale or lease of property."

A sale, per Black's Law Dictionary, is the transfer of property or title for a price. *Sale*, Black's Law Dictionary (11th ed. 2019). The Second Circuit has never opined on whether an assignment of an interest in property is tantamount to a "sale" for purposes of § 363(m). However, other courts that have faced this issue have concluded that such assignments are sales, because either (1) they were assignments for valuable consideration, or (2) the bankruptcy court authorized the § 365 assignment under § 363 as well.

 Applying either criterion, the intermediate assignment of the Mall of America Lease to Leaseco qualifies as a § 363(m) sale.

The Sixth and Fourth Circuits, as well as one of my colleagues in this District, have expressly held that a lease assignment for valuable consideration is a § 363 sale. *See Weingarten*, 396 F.3d at 742 (The Sixth Circuit holds that "the assignment of a lease for a valuable consideration" is a sale for § 363(m) purposes); *In re Adamson Co. Inc.*, 159 F.3d 896, 898 (4th Cir. 1998) (same); *see also In re Cooper*, 592 B.R. 469, 480 (S.D.N.Y. 2018), *appeal dismissed* (Mar. 1, 2019) ("This Court sees no meaningful distinction between a sale, on the one hand, and a transfer of property in exchange for valid consideration, on the other."). The Third and Ninth circuits have similarly treated assignments for consideration as § 363(m) "sales." *See Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 493 (3d Cir. 1998) (buyer purchased franchise agreement for $230,000); *In re Exennium, Inc.*, 715 F.2d 1401, 1404 (9th Cir. 1983)

22

(buyer purchased four of debtor's leases for over $78,000); *see also In re Am. Banknote Corp.*, No. 99 B 11577, 2000 WL 815910, at *2 (S.D.N.Y. June 22, 2000) (debtor received $380,000 for assuming lease); *but c.f. In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1085 (3d Cir. 1990) (appellee conceded that § 363(m) did not apply to mere lease assignments).

I can see no reason not to reach the same conclusion, and to hold that an assignment for consideration constitutes a "sale" as that word is used in the Code.

> (i)     The Assignment of the Lease Was a Sale Because It Was a Transfer of an Interest in Property for Consideration.

The Assignment Order authorized a transfer of Sears' interest in the Lease to Leaseco. And I must reject MOAC's contention that this particular assignment cannot be a "sale" within the meaning of these cases because it was not supported by independent consideration.

The Assignment Order directs Holdco to pay all cure costs due to MOAC under the Lease. (Assignment Order ¶ 11.) As noted above, this was the bargain struck in the APA; when a specific lease was designated for assignment, five business days after the resolution of any objections thereto (the Assumption Effective Date), Sears would assume the lease and assign the lease to Holdco's designee -- but only after Holdco paid cure costs for that lease. (APA § 2.7(c).)

Under the Bankruptcy Code, a debtor that assumes an unexpired ease is responsible for paying cure costs when the debtor assumes an unexpired lease. *See* 11 U.S.C. § 365(b)(1)(A). Sears did not become responsible for cure costs until is assumed the Mall of America Lease, which occurred on the Assumption Effective Date. Holdco's satisfaction of Sears' obligation to pay those cure costs constitutes valid consideration for the assignment of the Mall of America Lease itself. *See Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F. Supp. 2d 459, 467 (S.D.N.Y. 2013) (citing *Mencher v. Weiss*, 306 N.Y. 1, 8 (1953)). And because Sears had no obligation to pay cure costs until the Assumption Effective Date, the payment of those costs by Holdco

constitutes new consideration – not simply the carrying out of a preexisting obligation to which Holdco agreed in the APA. Indeed, Sears would not have incurred the statutory obligation to pay cure costs if the Bankruptcy Court's had not approved Sears' assumption of the MOAC Lease.

I thus have no difficulty concluding that the assignment to Leaseco was a "sale," because Sears transferred its interest in the Mall of America lease to Holdco's designee for consideration.

(ii)     The Assignment Was a Sale Pursuant to Both §§ 363 and 365.

That said, not every assignment under § 365 is *per se* a "§ 363(m) sale." Only assignments/sales that fall within § 363(b) or (c) of the Code qualify as "sales" for the purposes of § 363(m). As the Third Circuit put it, "[A] party need only obtain a stay pending appeal when the debtor receives authorization to assign and sell executory contracts or leases under *both* § 363 and § 365." *Cinicola v. Scharffenberger*, 248 F.3d 110, 124 (3d Cir. 2001) (emphasis added).

So the question becomes whether this particular assignment was authorized under both statutes, or was merely an assignment under § 365. The answer is: both.

Cases in other Circuit Courts of Appeal have attached great importance to whether the bankruptcy court "purported to authorize a section 363 sale" to distinguish such sales from cases where the debtor "merely assigns a lease under section 365." *In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 302 (3d Cir. 2000); *see also Weingarten*, 396 F.3d at 743; *Krebs*, 141 F.3d at 498. Numerous courts have applied § 363(m) to transactions where the bankruptcy court invoked § 363 as well as § 365 in order to authorize a transaction.

In *Krebs*, for example, the debtor moved to assume and assign three franchise agreements to the highest bidder at auction. 141 F.3d at 493. The court distinguished its case from *Slocum* (in which the Third Circuit had concluded that a "mere assignment" pursuant to § 365 was not a § 363(m) "sale") because, in *Krebs*, "the bankruptcy judge in this case authorized both an

assumption under section 365 and a subsequent sale under section 363." *Id.* at 498. Similarly, in *Rickel*, the debtor sold and assigned 41 leases to the buyer or its affiliate. 209 F.3d at 295. Once again, the court distinguished the case from *Slocum* because, "the District Court explicitly authorized a sale of the leases pursuant to section 363, despite [the appellant]'s contention that section 363 was inapplicable to this transaction." *Id.* at 302. I note also that the Sixth Circuit in *Weingarten* authorized the transaction under both § 363 and § 365. *Weingarten, supra*., 396 F.3d at 743.

And so we turn to the language of the Assignment Order in this case. Its text answers the question. The assignment of the Mall of America Lease is a sale for purposes of § 363(m) because the assignment of this particular designatable lease – which I have found to be a sale, a transfer of an interest in property for consideration) – repeatedly references §363 as well as § 365 as providing authority for the assignment. Despite Judge Drain's on-the-record statement that the Assignment Order would be "only" a "365," the text of the Assignment Order provides that, "*Pursuant to sections 105, 363, and 365* of the Bankruptcy Code, the Debtors . . . are authorized to take any and all actions as may be: (i) reasonably necessary or desirable to implement the assumption and assignment of the Designated Lease pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, the Related Agreements, the Sale Order, and this Order . . ." (Assignment Order ¶ 5 (emphasis added)); and "*Pursuant to sections 105(a), 363(b), 363(f), and 365* of the Bankruptcy Code, the Debtors are authorized to transfer the Designated Lease in accordance with the terms of the Asset Purchase Agreement and the Sale Order" (*id.* ¶ 6 (emphasis added)). These references alone are enough to bring the assignment of the Mall of America lease within the ambit of § 363(m).

25

Furthermore, the integrity of Assignment Order has to be protected by § 363(m), because the Assignment Order is "inextricably intertwined" with the Sale Order. *See Cinicola*, 248 F.3d at 126. As Judge Drain recognized at the hearing, the assignment to Leaseco was an "outgrowth" of the Sale Order. (Stay Tr. at 9:24.) Nothing could be more patent. The "sale" by assignment of leases to be designated in the future was originally authorized by the Sale Order, which was itself entered pursuant to § 363(b) of the Code. The Sale Order adopted the APA between Sears and Holdco – with all of its terms and conditions of sales of the designatable leases, as explained above – and incorporated the terms of that agreement into the Sale Order. The APA, as incorporated into the Sale Order, specifically provided that the "sale" of any designatable lease would take place only when an assignee is designated and the assignment is authorized

It is difficult to see how the Assignment Order effectuating a "sale" authorized pursuant to the Sale Order could be anything but "inextricably intertwined" with that Sale Order – an order that, while expressly stating that it did not bring about the "sale" of any particular lease, specifies when that sale would take place and sets out all the steps needed to effectuate the actual sale of any designated lease. The two orders could not operate more closely "in conjunction" with each other.

*Cinicola* is persuasive authority for this proposition. There, the debtor's trustee asked the bankruptcy court to approve a settlement agreement that involved the sale of assets and the assignment of executory contracts to a buyer for over $25 million. *Cinicola*, 248 F.3d at 116. The executory contracts included certain physicians' employment contracts, and the physicians objected to the assignment. *See id.* at 116–17. The bankruptcy court, invoking §§ 363 and 365, authorized the settlement agreement, but deferred action on the assignment of the physicians' contracts in order to address their objections. *See id.* at 117, 122. After a hearing on the physicians'

26

objections, the bankruptcy court entered a second order authorizing the assignment of the contracts under § 365. *See id.* at 125. The trustee assigned the contracts and subsequently closed on the settlement agreement. *See id.* at 117.

Notwithstanding the fact that the second order invoked only § 365, the Third Circuit determined it was "clear the Bankruptcy Court intended its Second Order to operate in conjunction with its First Order," such that the assumption and assignment of the employment contracts were "inextricably intertwined" with the debtor's sale of assets to the buyer in the settlement agreement. *Id.* at 125–26. Its reasoning is reminiscent of the Sixth Circuit's determination, in *Weingarten*, that a transaction carried out in two steps should be viewed from the perspective of the ultimate result.

Here, even if the Assignment Order itself were only a § 365 order (as Judge Drain obviously believed it to be), it was certainly an "outgrowth of the sale" (as he also believed), such that the two orders are inextricably intertwined. The transaction could not have been carried out without reference to both orders.

MOAC's arguments to the contrary are unconvincing.

First, MOAC argues that, unlike the Sale Order, the Assignment Order does not explicitly reference § 363(m). But in none of the cases discussed above did the court expressly reference subsection (m), as opposed to § 363 generally. *See, e.g.*, *Rickel*, 209 F.3d at 302; *Krebs*, 141 F.3d at 498.

MOAC also urges that, because it has a right to object as part of the designation process, its objection cannot be deemed "finally resolved" until its appeal is decided. Unfortunately, the language of § 363(m) is unforgiving: "Although an appellant's challenge to a sale authorization might raise meritorious arguments . . . denial of a requested stay has the effect of precluding this Court from reviewing those issues, other than the good faith of the purchaser, if the sale has closed

27

in the interim." *Gucci*, 105 F.3d at 840. The assignment of the Lease to Leaseco has taken place; the unstayed transaction has closed. Section 363(m) would be meaningless if "final resolution" of an objection were deemed delayed until a decision is rendered on appeal even in the absence of a stay. Indeed, the entire § 363(m) jurisprudence that has (finally) been called to the attention of this court consists of cases in which the objection was not "finally resolved" on MOAC's reading, because the landlord took an appeal. Yet appeal after appeal from consummated transaction has been dismissed for statutory mootness because of a desire to give "finality" to the judgments of the Bankruptcy Court – judgments that would be interlocutory in nature if they did not "finally resolve" objections. When it comes to statutory mootness under § 363(m), there are "special consequences of denying a stay of a bankruptcy sale" such that I may not review even the most meritorious arguments on appeal if the sale has closed in the interim. *See id.* at 840.

Next, MOAC argues that Transform provided no more or less consideration based on the approval or denial of the assignment of the Mall of America Lease. But as explained above (*see supra*, pp. 23–24), that is simply not so; Holdco made a separate and independent payment, in satisfaction of an obligation imposed by law on Sears, in order to bring about the assignment.

Finally, I have considered the possibility that this case presents the never-before-found and possibly mythical "exception" to the usual rule of statutory mootness that was mentioned in passing in *WestPoint*, 600 F.3d at 249. The *WestPoint* court speculated that there might be "challenges to the Sale Order that are so divorced from the overall transaction that the challenged provision would have affected none of the considerations on which the purchaser relied, thereby allowing a higher court to entertain an appeal from a consummated transaction in the absence of a stay. *Cf. Krebs Chrysler–Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir.1998)

28

(stating that an appeal is not moot under § 363(m) unless the party failed to obtain a stay and reviewing courts can fashion a remedy "that will not affect the validity of the sale")." *Id.*

Unfortunately for MOAC, I cannot conclude that this case would fall within any such exception. Judge Drain did say (also in passing) that § 363(m) probably would not apply to the Assignment Order because MOAC was appealing from just one assignment among 600 that were authorized by the Sale Order. But nothing in the record supports a conclusion that losing the opportunity to sublease the Mall of America space "would have affected none of the considerations on which [Transform/Holdco] relied" in making the deal enshrined in the APA. If, as MOAC insists, Mall of America is a very special mall in the pantheon of American malls, then the opportunity to sublease Sears' very valuable space at this very special mall might well have been integral to any deal Transform was willing to enter. Any "finding" that Transform would have agreed to  the same deal, on the same terms memorialized in the Sale Order, without gaining the ability to sublease the Mall of America space would be pure conjecture on my part. There was no hearing at which evidence was adduced on that issue; and it is not a conclusion one can reach simply because the Mall of America lease is but one among 600.

So either the Assignment Order brought about a § 363(m) sale, or it is protected by virtue of its connection to the APA and the Sale Order. Either way, Transform wins.

I am not suggesting that MOAC needed to obtain a stay of the actual Sale Order at the time it was entered. It could not possibly have done so, since at that point no one knew to whom the Mall of America Lease might be designated, so there would have been no basis on which to object. But Sears' assignment of the Mall of America Lease to Leaseco in the Assignment Order is protected by § 363(m), because, per the terms of the APA, the Assignment Order effected a sale (a transfer for consideration) of that lease, as authorized by the Sale Order. If MOAC had obtained

a stay of the Assignment Order from Judge Drain, we would not be here today. And if MOAC had asked this court to impose a stay prior to the consummation of the assignment, we might not be here today.[10] But it did not.

It is, therefore, with deep regret that I grant the motion for rehearing and, on rehearing, dismiss MOAC's appeal as statutorily moot. That necessitates the vacatur of this court's decision on appeal.

## CONCLUSION

For the reasons stated above, Transform's motion for rehearing is GRANTED. On rehearing, this Court concludes that it lacks appellate jurisdiction over MOAC's appeal because it is statutorily moot under § 363(m). Therefore, this court's decision on appeal at Dkt. No. 26 is VACATED and MOAC's appeal at Dkt. No. 1 is DISMISSED.

This constitutes a written opinion and order of the court. The Clerk of Court is directed to close the motion at Dkt. No. 29.

Dated:  May 11, 2020
New York, New York

_____
Chief Judge

BY ECF TO ALL PARTIES

---

[10] Obviously, I cannot go back in time and say with certainty what ruling would have issued if MOAC had sought a stay pending appeal back in September of last year. Other landlords, such as the landlord in Weingarten, have tried and failed to obtain stays pending appeal in similar circumstances. For all I know, it was already too late by the time MOAC filed its notice of appeal. However, I certainly cannot say that I absolutely would have denied any such application.