UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re: SEARS HOLDINGS CORPORATION,
et al.,

                              Debtors.

MOAC MALL HOLDINGS LLC,

                              Appellant,

      -against-

TRANSFORM HOLDCO LLC and
SEARS HOLDINGS CORPORATION, et al.

                              Appellees.

No. 19 Civ. 09140 (CM)

---

**ORDER DENYING MOAC MALL HOLDINGS LLC'S MOTION FOR REHEARING**

McMahon, C.J.:

       This case first came to me when Appellant MOAC Mall Holdings LLC ("MOAC") took an appeal from an order of the United States Bankruptcy Court for the Southern District of New York (Drain, B.J.) approving the assignment and assumption of a certain lease (the "Lease") of the Sears store at the Mall of America in Minneapolis, Minnesota to an entity known as Transform Leaseco LLC (together with Transform Holdco LLC, "Transform"). The appeal has already generated two lengthy opinions: one overturning Judge Drain's order approving the assignment, *In re Sears Holdings Corp.*, 613 B.R. 51 (S.D.N.Y. 2020), ("Decision on Appeal," Dkt. No. 26), and a second vacating that order on rehearing, after I was reluctantly persuaded that I lacked jurisdiction over the appeal as it had been presented to me, because the argument raised by MOAC was statutorily moot, *In re Sears Holdings Corp.*, 2020 WL 2319194 (S.D.N.Y. May 11, 2020), ("Rehearing Decision," Dkt. No. 34).

Now MOAC seeks its own rehearing of the rehearing. It now raises – belatedly – an entirely new argument; namely, that Transform did not obtain assignment of the Lease "in good faith" as required by § 363(m). (Appellant's Mot. for Reh'g "MOAC Reh'g Mot.," Dkt. No. 35.) This argument is not properly before the court.

I have no intention of rehashing yet again how we got to this point. I assume that the reader is fully familiar with both the Decision on Appeal and the Rehearing Decision.

As is my custom, I have considered the rehearing motion without in the first instance requiring a response. *See* McMahon, C.J., Individual Prac. & Proc. V(F)(5). Having done so I find that I can deny the motion without the need for any response from Transform.

MOAC moves for rehearing under Bankruptcy Rule 8022. "The standard for granting such a motion, derived from Rule 40 of the Federal Rules of Appellate Procedure, requires the movant to state with particularity each point of law or fact that the movant believes the district court or BAP has overlooked or misapprehended." *In re Soundview Elite Ltd.*, No. 14-cv-7666, 2015 WL 1642986, at *1 (S.D.N.Y. Apr. 13, 2015), *aff'd*, 646 F. App'x 1 (2d Cir. 2016) (internal quotations and citations omitted). The failure to raise an argument while a case is under adjudication precludes the granting of a motion for rehearing/reargument. *Id.* This strict standard does not allow the movant to reargue its case, but rather is intended to "direct the court's attention to a material matter of law or fact which it has overlooked in deciding the case, and which, had it been given consideration, would probably have brought about a different result." *Id.*

In the Rehearing Decision, I concluded that the Decision on Appeal had to be vacated because MOAC's appeal – in which it sought to undo the already-consummated assignment of the Lease – was statutorily moot. MOAC had not obtained a stay of the order appealed from pending its appeal; it had failed to convince the Bankruptcy Court to issue a stay, and it did not even seek

a stay pending appeal from this court. The transaction was completed; the Lease was assigned. As a result, this court was divested of jurisdiction to hear an appeal from the order assigning the lease, because 11 U.S.C. § 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363.

Put otherwise, once the transaction was consummated, MOAC's appeal on the merits became statutorily moot. According to the Second Circuit, once the transaction closed, "we only retain authority to review challenges to the 'good faith' aspect of the sale." *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 248 (2d Cir. 2010) (citing *In re Gucci*, 105 F.3d 837, 838, 840 (2d Cir. 1997)).

Obviously, there is a loophole in § 363(m); the good faith purchaser issue could have been raised on appeal. MOAC was well aware of the statutory mootness possibility, because it had argued to Judge Drain that he needed to enter a stay pending appeal for that very reason.

But MOAC did not argue Transform's lack of good faith on appeal. Instead, it elected to rest on Judge Drain's conclusion that "this is not . . . it's not a 363(m)" (a conclusion that I have found to be incorrect), as well as on Transform's representation that it would not raise the issue of statutory mootness on appeal (which it did not). (*See* Stay Hearing Tr. at 9:23-25, 10:1, Dkt. No. 29-1.) I understand why MOAC did not do so – it was lulled into not doing so. But that does not mean MOAC can raise the issue now, on a rehearing after a rehearing.

MOAC understands that today is too late to raise the good faith purchaser issue for the first time. It insists that it preserved the issue "in its response to Transform's motion for reconsideration." (MOAC Reh'g Mot. at 6.)

Even if this were true, it would not be clear to me that MOAC had timely raised the issue. But it is not true.

The court was obviously aware of the bad faith exception to the applicability of § 363(m); indeed, in the Rehearing Decision, I observed that neither party had briefed or argued it. (*See* Dkt. No. 34 at 12.) MOAC now insists that I overlooked two places where it in fact made the argument. Unfortunately, neither reference comes in the context of an argument that Transform was not a good faith purchaser within the meaning of § 363(m).

The thrust of MOAC's argument in opposition to Transform's motion was that § 363(m) did not bar its appeal because Transform (1) had waived the protection of the statute, and (2) was estopped to contend otherwise. The argument headings in its brief in opposition to the motion were three:

"Transform affirmatively waived any § 363(m) rights,"

"The Bankruptcy Court correctly determined that § 363(m) does not apply," and

"Transform is judicially estopped from asserting that § 363(m) applies."

(MOAC's Resp. to Mot. for Reh'g, "Reh'g Resp.," Dkt. No. 33 at 9, 14, 18.) Conspicuously absent from this list of arguments is, "If all these arguments are wrong and § 363(m) really does apply to this appeal, then Transform cannot rely on it because it falls within the statutory exception for bad faith purchasers."

Additionally, when one dissects the references on which MOAC now relies, it is clear that neither of them raises the argument that Transform consummated the lease assignment in bad faith.

In making its waiver argument, MOAC quoted a portion of § 363(m):

The reversal or modification on appeal of an authorization under (b) or (c) of . . . section [363] of a sale or lease of property does not affect the validity of a sale or lease under such authorization . . . unless such authorization and such sale or lease were stayed pending appeal.

4

(Reh'g Resp. at 10 (alterations *and omissions* original)). The reader will notice that this quotation does not even include the part of § 363(m) that references the good faith requirement. MOAC then discussed *In re Gucci*, 105 F.3d 837, 839–40 (2d Cir. 1997), the leading Second Circuit opinion on the effect of § 363(m) on an unstayed sale order. (Reh'g Resp. at 10.) In a parenthetical that appeared at the end of that discussion,[1] MOAC summarized *Gucci* as "discussing jurisdictional impact as resulting from § 363(m)'s prohibitions against reversing a sale order absent a stay *or bad faith on the part of the purchaser*." (Reh'g Resp. at 10 (emphasis added).) MOAC, having done nothing more than restate what *Gucci* discussed, did not then go on to argue that Transform was not a good faith purchaser within the meaning of that statute, or to explain why that might be so. Its only argument was that Transform had waived the protection of the statute.

MOAC also used the words "bad faith" while arguing that Transform was judicially estopped from relying on § 363(m). (*See* Reh'g Resp. at 18-20.) One factor that affects judicial estoppel is whether a party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. (*See id.* at 18.) Noting that Transform had represented to the Bankruptcy Court that it would not rely on § 363(m) on appeal (and, in fact, it did not), MOAC said, "Transform seeks to unfairly and irreparably harm MOAC by permanently foreclosing all judicial remedy to which this Court held MOAC is entitled—after MOAC expended significant resources in obtaining this Court's decision and a remedy which would have otherwise been available *absent Transform's bad faith*," and Transform's "firm and concrete representations . . . reveal *Transform's bad faith* in obtaining the denial of MOAC's motion to stay . . . ." (*Id.* at

---

[1] Parentheticals are an artifact of modern legal writing that this court happens to loathe. They are no substitute for a robust discussion of the facts and reasoning of an opinion, and they frequently cover the citation of wholly inapposite cases (not to mention, cases in which the ruling goes against the citing party's position). Raising an argument in a parenthetical is no different from raising an argument in a footnote. But this particular parenthetical did not raise an argument. It simply recited a statutory standard.

19-20 (emphasis added).) In other words, MOAC argued that Transform's representation to Judge Drain was made in bad faith, thereby estopping it from relying on the statute. But it is one thing to say that a party is estopped – by virtue of a representation made in bad faith – to rely on a statute that would otherwise be applicable, and another thing altogether to say that the statute does not apply by its literal terms because the party took title in bad faith. MOAC never makes the latter argument, and nowhere in its response to Transform's motion for reconsideration does it brief the issue of what it would take to render someone a bad faith purchaser for purposes of § 363(m).

Moreover, the existence of good or bad faith raises an issue of fact, not of law. No court could have entertained the proposition that Transform took title to the Lease in bad faith without undertaking a searching inquiry into the state of knowledge and state of mind of Transform and its lawyers at the time they made the representation to Judge Drain. The statute specifically says that consummating a challenged transaction with knowledge that the order authorizing the deal would be appealed does not constitute bad faith. So, even assuming the stay hearing is part of the sale proceedings, the only way to prove that Transform was a bad faith purchaser – and it needed to be proved – would be if its lawyers (1) knew full well that MOAC's appeal was statutorily doomed when they made their argument before Judge Drain, but (2) lied to the judge (who was himself obviously unaware of the scope of the appellate bar), and then (3) took a chance by not moving to dismiss the appeal and deliberately holding their cards until after they lost on the merits.

I admit of that possibility.

But I also admit of the possibility that Transform and its counsel really thought, in good faith, that Judge Drain was correct when counsel agreed that § 363(m) did not apply to this transaction, and rethought their position only after they lost on appeal. If that be the case, then Transform might well be a good faith purchaser; I claim no expertise on this area of law. But

making a mistake of law would rarely, if ever, rise to the level of bad faith. And at least that view of the facts would explain what to me is otherwise unthinkable: that a lawyer, who has an absolute duty of good faith to his client, and who is fully aware of a dispositive argument that favors his client's cause, would fail to raise that argument at the earliest opportunity by moving to dismiss the appeal.

Unfortunately for MOAC, there is no evidence one way or the other about Transform's state of mind at the stay hearing, so it is impossible to render a final decision on the point. Which is why, had MOAC at any point argued that Transform was not a "good faith purchaser" within the meaning of § 363(m) – as opposed to arguing that Transform was estopped to rely on § 363(m) by virtue of its statements to Judge Drain – I would certainly not have "overlooked" the argument. I would at least have considered whether, at the rehearing stage and with Transform's status as a good faith purchaser not having been raised on the original appeal, I had the ability to remand the case to the Bankruptcy Court so that it could develop a record on the issue. In its motion for rehearing and in a letter sent to the court after briefing on this motion concluded, MOAC asks for just such a remand. (*See* Dkt. Nos. 35, 37.) But it is far too late for that now.

Finally, I am constrained to note that MOAC had an opportunity to forestall this entire mess. MOAC could have sought a stay pending appeal in this court. It did not do so. Of course, Transform had said that it did not intend to raise the issue on appeal (which, in fact, it did not), and that Judge Drain plainly believed Transform would be estopped from arguing that an appellate court lacked jurisdiction. These things undoubtedly persuaded MOAC's counsel that no such application was necessary. Had I been in their shoes, I might well have concluded the same.

But MOAC, not Transform, first raised the possibility that its appeal might be statutorily mooted in the absence of a stay. It would be in a far better position today if, having failed to

convince Judge Drain on that issue, it had come to this court and made the same argument, on the off chance that Judge Drain (and Transform) were wrong. That is what the appellants did in *Weingarten Nostat, Inc. v. Service Merchandise Co.*, 396 F.3d 737, 740 (6th Cir. 2005) and *Gucci*, 105 F.3d at 839; they asked the appellate courts for a stay.

Of course, there is no guarantee that this court would have seen matters any differently at the outset of this appeal than did the learned bankruptcy judge. We cannot create a counter-factual, and MOAC's success was far from certain. In both *Weingarten* and *Gucci*, the appellate courts denied the motions for a stay pending appeal; confronted with those precedents, this court might well have done the same. But I cannot say with certainty that I would have denied MOAC's application to this court seeking a stay. And even if I had, MOAC could have sought an emergency stay from the Court of Appeals, as did the appellants in *Weingarten* and *Gucci*.

But MOAC did not pursue these avenues for relief. Instead, it makes a last-ditch effort to keep its appeal alive by seeking rehearing of an order granting rehearing.

So I reject MOAC's contention that this court "overlooked" or "misapprehended" any argument that was actually raised, either on appeal or on Transform's motion for reconsideration. For that reason, MOAC's motion must be denied.

## CONCLUSION

It is high time for the parties to take this matter to the Second Circuit, where a learned panel can decide whether judicial estoppel can be relied on to create jurisdiction where a law says there is none, or whether I have misread MOAC's arguments about bad faith (assuming them to have been timely raised). I look forward to its views on these thorny questions. But this court is done wrestling with this case.

MOAC's motion for rehearing is DENIED. This constitutes a written opinion and order of the court. The Clerk of Court is directed to close the motion at Dkt. No. 35.

Dated:   June 5, 2020

_____
Chief Judge

BY ECF TO ALL PARTIES