UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

In re: SEARS HOLDINGS CORPORATION,
et al.,

                              Debtors.

MOAC MALL HOLDINGS LLC,

                     Appellant,         No. 19 Civ. 09140 (CM)

   -against-

TRANSFORM HOLDCO LLC and
SEARS HOLDINGS CORPORATION, et al.

                     Appellees.
--------------------------------------------------------------x

## FURTHER QUESTIONS FOLLOWING ORAL ARGUMENT

McMahon, J.:

      As generally happens, questions have occurred to me subsequent to our session last week. Could I ask you to address them briefly in writing, to be received by the end of the week?

      1.     Transform is barred from relying on 11 U.S.C. § 363(m) in order to argue that there is no remedy available to MOAC, because it has waived reliance on any such argument. Section 363(m) provides that: "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." So Transform is barred from arguing that the lack of a stay pending appeal means that my reversal of Judge Drain's order authorizing the sale (which reversal has been upheld on appeal) does not affect the validity of the sale, which has been consummated. But Transform takes the position that it is not barred from relying on the ancient and hoary common law rule that someone aggrieved by a consummated (unstayed) sale to a good faith purchaser must look to the proceeds, not the property -- because the validity of the sale is not impacted simply because the lower court erred, as long as the court was properly exercising jurisdiction when it issued the erroneous order. As far as I can tell, all Section 363(m) does is enshrine that common law rule into the Bankruptcy Code. As an order authorizing a proposed sale is always subject to a stay, inside or outside of bankruptcy, why is Transform able to get around its waiver of reliance on Section 363(m) by arguing that the unstayed transaction cannot be avoided under the common law rule? Is this not exactly the argument it has waived reliance on in (Bankruptcy) codified form? Isn't this a "heads I win, tails you lose" proposition?

2.      Assume that Transform can get around its waiver and argue that the common law rule applies. I have been cited to and have found cases that hold that courts can set aside judicial sales if adhering to the common law rule would turn the court into an "instrument of injustice." *See, e.g., Altschuler Shaham Provident Funds, Ltd. v. GML Tower LLC*, 129 A.D.3d 1439, 1442 (N.Y. App. Div. 4th Dep't 2015); *Fleet Fin. v. Gillerson*, 277 A.D.2d 279, 280 (N.Y. App. Div. 2d Dep't 2000); *Levitin v. Homburger*, 932 F. Supp. 508, 519 (S.D.N.Y. 1996); *Mikulec v. United States*, 705 F.2d 599, 602 (2d Cir. 1983); *Guardian Loan Co., Inc. v. Early*, 47 N.Y.2d 515, 520-21 (1979). Is this still the rule? Would this be an instance where such exception applies?

3.      Assume the Lease cannot be clawed back. What provision of the Code (if any) supports MOAC's alternative request for monetary relief – which, if I understand my notes correctly, is a request that Transform pay to MOAC the benefit that Transform receives from subleasing the old Sears store for the next 65 years? In this regard, the benefit to which MOAC was entitled by the special rules for shopping centers was no assignment to a disqualified entity under Section 365(b)(3). It is law of the case that Transform is a disqualified entity. So MOAC was denied the protection to which it was entitled under the Code. How does monetary compensation give MOAC the benefit of the protection to which the Bankruptcy Code entitled it?

4.      If no relief is available as against Transform, the "follow the proceeds" rule suggests that monetary relief should be available against Sears, because Sears is holding the proceeds (or what is left of them). But Sears argues that the exculpation order bars any relief as against it. Yet Sears has signed a post-confirmation agreement with Transform that appears to me to go against the exculpation order, since pursuant to that agreement, Sears undertakes an obligation it had absolutely no need to undertake to compensate Transform if Transform is not able to keep the lease. Head I win, tails you lose again? Or do I misunderstand what the exculpation provision "exculpates?"

5.      A question that has haunted me since the beginning of this case is: what is the effective date of the Transfer Order? Is it the day Judge Drain announced his decision (August 23) or the day a written order was signed (September 5)? This is not the first time I have had to deal with the issuance of a comprehensive decision delivered from the bankruptcy bench followed by the issuance of a written order some days or weeks later, but it is the first time that a critically important date (August 31) has come after the former but prior to the latter. I know we touched on this at oral argument but I still don't have a satisfactory answer.

6.      Assume the correct remedy is the alternative remedy suggested by Transform and Sears – we turn back the clock to August 23 and run the counterfactual on the assumption that Judge Drain made the correct decision instead of the wrong one. This would give Sears eight days to assume the lease – which we all know it would do, because it would never forfeit an asset of such value to the estate. After that, could it do pretty much what it pleased with the lease? Could it assign it to Transform – an entity that, I repeat, is disqualified under Section 365(b)(3)(A), and that is law of the case – or to some other entity that did not have to meet the qualifications of Section 365(b)(3)(A), such as a new enterprise formed by the same people who are behind Transform? Does running this counterfactual mean that we also assume the Plan does not get

confirmed in October 2019? What are the implications of running this counterfactual on confirmation of the plan?

      I just want you all to know that this case gives me a terrific headache. But it is terribly interesting. Seems to be my lot in life to draw terribly interesting bankruptcy appeals. I very much enjoyed our session last week. Now I just have to come up with an answer.

Dated: April 16, 2024

                                                */s/ Colleen McMahon*
                                                      U.S.D.J.

BY ECF TO ALL COUNSEL