UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

In re:
SEARS HOLDINGS CORPORATION, *et al.*,

                    Debtors,

———————————————————— x

MOAC MALL HOLDINGS LLC,

                    Appellant-Cross-Appellee,

     -against-                                                    19-cv-9140 (CM)

TRANSFORM HOLDCO LLC,

                    Appellee,

SRZ LIQUIDATING TRUSTEE, Successor in
Interest Sears Holdings Corporation,

                    Trustee-Appellee.

———————————————————— x

## OPINION AND ORDER

McMahon, J.:

     Appellee SRZ Liquidating Trustee (the "Trust"), joined by Transform Holdco LLC

("Transform"), moves to compel discovery from MOAC Mall Holdings LLC ("MOAC"). Dkt.

No. 131. MOAC cross-moves to modify the Court's scheduling order to address whether the Trust

has suffered any damage at all, given that Transform will ultimately pay the costs that the Trust

incurred pursuant to the Trust and Transform's July 16, 2024 Economic Benefit and Operating

Agreement. Dkt. No. 135. For the following reasons, the Trust's motion is GRANTED IN PART,

and MOAC's cross-motion to modify the scheduling order is DENIED.

1

I.    **BACKGROUND**

The Trust and Transform seek to recover damages incurred as a result of the stay occasioned by MOAC's appeal of the Court's May 3, 2024, decision in *In re Sears Holdings Corp.*, 661 B.R. 298 (S.D.N.Y. 2024) ("*Sears VI*"). Dkt. No. 115, Appellees' Mot. to Enforce Liability of Supersedeas Bond ("Bond Motion"). Before granting the stay, the Court required MOAC to post a $2.5 million supersedeas bond as security for damages arising from, *inter alia*, the Trust's inability to enter into new subleases during the pendency of MOAC's appeal. *In re Sears Holdings Corp.*, 2024 WL 2751131, at *2 (S.D.N.Y. May 29, 2024) ("*Sears VII*"). The Second Circuit affirmed this Court's ruling in *Sears VI*, holding that there was "no basis for the MOAC Lease to revert to MOAC" and that the MOAC Lease is "properly in the control of the Liquidating Trustee." *In re Sears Holdings Corp.*, 2024 WL 5113165, at *4, *6 (2d Cir. Dec. 16, 2024) ("*Sears VIII*").

Over the past few months, the parties have engaged in discovery to determine the appropriate amount of damages to which the Trust is entitled – either under or in excess of the $2.5 million bond that MOAC had posted. The Trust and Transform contend that, although they have together produced more than 1,200 documents to MOAC, MOAC has produced none. According to the Trust, MOAC has hidden behind the fig leaf of the Court's June 20, 2025, order concerning third-party discovery, Dkt. No. 124, despite since having opened the door to such discovery by serving subpoenas on the Retail Center Subtenant and the Trust's real estate broker. Dkt. No. 131, at 5–6. MOAC, for its part, contends that the Trust's motion to compel should be summarily denied as untimely. Dkt. No. 135, at 2.

For the reasons explained below, the Trust's motion to compel production of documents, Dkt. No. 131, is GRANTED IN PART, and MOAC's cross-motion, Dkt. No. 135, to modify the scheduling order is DENIED

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." In determining what information is discoverable, the court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

For purposes of discovery under Rule 26(b), relevance is accorded a broad construction. *See, e.g.*, *Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15 CIV. 2106 (ER), 2019 WL 171987, at *2 (S.D.N.Y. Jan. 11, 2019). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (citation modified). The moving party "bears the initial burden of demonstrating that the information sought is relevant and proportional." *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18 Civ. 3025 (PGG) (VF), 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022). Once the moving party has made this showing, "the burden shifts to the opposing party to justify curtailing discovery." *Id.*

When a party refuses or fails to respond to a discovery request, Federal Rule of Civil Procedure 37(a) allows a party to move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(1). The party resisting discovery "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive." *Chen-Oster v. Goldman, Sachs & Co.*, 293

F.R.D. 557, 561 (S.D.N.Y. 2013) (citation omitted). Federal district courts have broad discretion in ruling on a motion to compel discovery. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012).

## III.    DISCUSSION

As an initial matter, MOAC objects to the Trust's motion to compel discovery as untimely, noting that it was filed after the parties' jointly agreed-upon deadline of July 25, 2025. Dkt. No. 135, MOAC's Opp'n to Trust's Mot. to Compel, at 5–10. But MOAC does not dispute that the Trust's discovery requests were timely served. *See Sidari v. Orleans Cnty.*, No. 95CV7250(S), 2000 WL 33597212, at *2 (W.D.N.Y. Mar. 31, 2000) (holding that a motion to compel may properly be considered even if filed after a scheduling order's cutoff date where the underlying discovery request was timely served). In any event, the Court declines to resolve the motion on procedural grounds alone, particularly because the Court never formally set a deadline for the close of discovery. *See* Dkt. Nos. 120, 125. What is more, the record does not establish that the parties have in fact completed discovery, as MOAC concedes in its opposition brief that, "There are at least five depositions remaining, including expert discovery." Dkt. No. 135, at 18. Accordingly, the Court rejects MOAC's timeliness objection and will consider the Trust's motion on the merits.

### a.   Third-Party Discovery

On June 20, 2025, the Court stated that it did not see the need for extensive third-party discovery on the issue of damages, explaining that the only arguably relevant fact was whether there had been discussions between MOAC and potential tenants in the Mall of America. Dkt. No. 124, at 2. The Court noted that "a simple interrogatory or request for admission from the Trust to MOAC is sufficient to establish that fact" and ruled that discovery of third-party tenants would not be permitted. *Id.* Since that order, however, MOAC has subpoenaed subtenants for testimony

concerning the details of their negotiations with the Trust, thereby placing the Trust's communications with third-party subtenants squarely at issue. Having opened the door to third-party discovery of communications with subtenants, MOAC cannot now close it to the Trust. The Court addresses each of the Trust's discovery requests in turn.

### *Request 1:  Communications Between MOAC and the Retail Center Subtenant.*

On August 25, 2025, MOAC issued a subpoena to the third-party Retail Center Subtenant (Primark US Corporation) seeking testimony on topics including, "The negotiation and terms of the Retail Sublease" and, "The termination of the Retail Sublease and the reasons therefor." Dkt. No. 130-1, Silbert Decl., Ex. A, at 6–7. In its responses to the Trust's first set of interrogatories, MOAC acknowledged that, during the pendency of the stay – when the Trust was barred by the Court's stay order from entering into any sublease under the MOAC Lease – it engaged in negotiations with Primark. Dkt. No. 132-1, Silbert Decl., Ex. C, at 2. MOAC, in support of its opposition brief to Appellees' Bond Motion, filed a third-party declaration from Primark's Head of Real Estate, Jerod Dinkin. Dkt. No. 150.

It would be fundamentally unfair to permit MOAC to pursue third-party discovery from Primark while denying the Trust the same opportunity. The Trust seeks third-party discovery from the Primark to ascertain the damages it may have incurred as a result of MOAC's negotiations with Primark. Because MOAC's third-party communications with Primark are plainly relevant, *see* Dkt. No. 131, at 15–16, the burden now falls squarely on MOAC to justify withholding discovery – a burden it cannot meet, given that it has itself sought information about the Trust's dealings with Primark. As the court in *Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016), observed, "Discovery is not a matter of gamesmanship nor conducted like a game of chess"; rather, "the over-arching purpose of the discovery rules is to encourage the disclosure of

information and materials to avoid unnecessary surprise and to level the playing field for both parties to the litigation." That principle applies here: MOAC cannot invoke the discovery process for its own advantage and then shield from discovery the very same subject matter when sought by the Trust. The discovery rules exist to ensure fairness and parity between the parties.

Because MOAC has already pursued third-party discovery from Primark, "all bets are off." Dkt. No. 124, at 3. The Court cannot see discern how MOAC's crystal-ball conclusion "that there will be no evidence that [Primark] would have consummated the sublease and proceeded to occupy and improve the premises in the absence of a stay" could be credibly asserted without the benefit of third-party discovery. Dkt. No. 135, at 12. Although MOAC professes that it "has no objection to the Trust and Transform taking the testimony of [Primark] concerning the reasons for termination of the Retail Sublease," it simultaneously insists that communications between MOAC and Primark are "off limits." *Id.* at 13. That position is untenable. Discovery into Primark's reasons for terminating its sublease with the Trust necessarily encompasses communications it may have had with MOAC during the stay period, including communications MOAC may have had with Primark concerning different locations at the Mall of America. The Trust is entitled to discovery of any communications between MOAC and Primark that may have contributed to Primark's termination of its sublease with the Trust – particularly given that MOAC has already subpoenaed Primark for testimony concerning its negotiations with the Trust. Dkt. No. 130-1, Silbert Decl., Ex. A, at 6. The Trust's request to obtain third-party discovery from Primark is GRANTED.

***Request 2:  Communications Between MOAC and the Entertainment Center Subtenant and the Potential Acquiror.***

The Trust also seeks discovery about communication between MOAC and two other entities – the Entertainment Center Subtenant and the Potential Acquiror – to determine whether MOAC sought to exploit the stay by discouraging potential business partners from dealing with the Trust or Transform.  MOAC acknowledges that it was aware of, and had communicated with, both entities regarding their interest in the Mall of America.  *See* Dkt. No. 132-1, Silbert Decl., at 3–4.  Any communications indicating that MOAC sought to dissuade them from engaging with the Trust are arguably relevant to the request for damages arising from the stay.

Although MOAC represents that it has no communications with the Entertainment Center Subtenant concerning property subject to the MOAC Lease, the Trust and Transform are not required to take MOAC at its word.  Discovery into whether MOAC sought to discourage subtenants from dealing with the Trust necessarily encompasses communications MOAC may have had with subtenants during the stay period concerning other locations within the Mall of America.

Moreover, MOAC has already opened the door to third-party discovery of communications with the Entertainment Center.  In its opposition brief to Appellees' Bond Motion, MOAC submitted declarations from the Entertainment Center's leasing counsel, Emily Minns, and its broker's Executive Managing Director, David Friedman.  Dkt. Nos. 151, 152.  These declarations comprehensively describe the Entertainment Center's lease negotiations with Transform, including the drafting history of the lease's contemplated terms.  *Id.*  Having affirmatively relied on these third-party accounts to support its own position, MOAC cannot now object to reciprocal discovery of related communications sought by the Trust.  Principles of parity and fairness warrant

reciprocal discovery. The Trust's request to obtain third-party discovery concerning communications between MOAC and the Entertainment Center regarding property subject to the MOAC Lease or any other space in the Mall of America is GRANTED.

With respect to the Trust's request for communications concerning the Potential Acquiror, MOAC represents it has no communications with the Potential Acquiror during the identified time period between May 3, 2024 and April 28, 2025, and that its last communication regarding property Subject to the MOAC Lease occurred in March 2024. The Trust's specific request for discovery about communications between MOAC and the Potential Acquiror during the period between May 3, 2024 and April 28, 2025 is therefore DENIED. *See Funai Elec. Co. v. Orion Elec. Co.*, No. 01CIV.3501(AGS)(JCF), 2002 WL 1808419, at *6 (S.D.N.Y. Aug. 7, 2002).

### ***Request 3:  Economic Terms of Proposed Transactions with MOAC Involving the Property.***

Finally, the Trust seeks to obtain information about proposed lease terms MOAC may have negotiated with potential tenants for the former Sears location between April 19, 2023 and April 28, 2025. Dkt. No. 131, at 7–8 n.5. The Trust contends that it "has a right to know whether the valuation by MOAC's expert (or other valuation evidence MOAC introduces) is consistent with MOAC's bargaining positions in its own arms-length negotiations concerning the Property." *Id.* at 18. MOAC responds that any such valuation of the Sears property is irrelevant because, under the applicable Amended and Restated Reciprocal Easement and Operating Agreement (the "REA"), Dkt. No. 149-2, the Sears location is considered a "Major" – a classification reserved for traditional department stores that occupy at least two floors and are entitled to more expansive rights, Dkt. No. 131, at 16–17. According to MOAC, neither the Retail Center Subtenant nor the Entertainment Center Subtenant is a "Major." *See* Dkt. No. 131, at 16–17.

But the Court need not determine or weigh the relevance of MOAC's valuation of the Sears location based on any "Major"/non-"Major" distinction. Even assuming *arguendo* that MOAC's proposed terms with potential tenants for the former Sears location were relevant for determining the valuation of the Retail and Entertainment Center Subleases, MOAC represents that it has no documents responsive to the Trust's request because none of its preliminary interactions with potential lessees of the Sears location ever progressed into any exchange or negotiation of economic terms for a proposed lease or sale. In other words, there are simply no economic terms on which the Trust could rely to calculate damages related to devaluation. Accordingly, the Trust's third request to compel is DENIED; the Trust has its answer. *See Funai*, 2002 WL 1808419, at *6.

### b. MOAC's Cross-Motion to Modify the Scheduling Order

MOAC also cross-moves, Dkt. No.135, at 17, asking the court to reconsider its scheduling order, Dkt. No. 120, in order to permit a record to be submitted on the issue of whether the Trust has incurred any damages. According to MOAC, under the Trust and Transform's July 16, 2024 Economic Benefit and Operating Agreement ("EBOA"), Dkt. No. 156-1, Ex. A, at 3–4, all carrying costs, rent, and other amounts owed under the Master Lease to MOAC are either paid directly by Transform or advanced to the Trust by Transform before the Trust makes any nominal payments to MOAC. In exchange for Transform's assuming ultimate responsibility for payments under the MOAC Lease, the Trust agreed to "allow Transform to obtain the economic benefits that [Sears] and Transform intended that Transform obtain from its acquisition of the [MOAC] Lease," pursuant to the Trust and Transform's Settlement Agreement, No. 18-23538, Bankr. Dkt. No. 10579, at 56, which was approved by the Bankruptcy Court in September 2022, Bankr. Dkt. No. 10629. MOAC contends that this arrangement demonstrates that the Trust has not suffered

any damages as a result of the stay.  The Court declines to decide the issue on the merits at this juncture.  The question of damages will be addressed following completion of the parties' briefing on Appellees' Bond Motion.

## Conclusion

For the foregoing reasons, the Trust's motion to compel, Dkt. Nos. 129, 131, is GRANTED IN PART, and MOAC's cross-motion, 135, is DENIED.  On or before November 3, 2025, MOAC must produce discovery responsive to the Trust's first request and to the portion of its second request seeking third-party discovery concerning communications between MOAC and the Entertainment Center.  And because MOAC has opened the door to third-party discovery of communications with subtenants, the Trust may file additional or amended discovery requests by November 14, 2025.  MOAC's responses and objections are due two weeks later by November 28, 2025.  The parties are directed to complete all discovery by January 9, 2026.  No further extensions of discovery will be granted.  The Appellees' reply brief in support of their Bond Motion is due January 30, 2026.

The Court reminds the parties that compliance with discovery obligations "is not optional or negotiable; rather, the integrity of our civil litigation process requires that the parties before us . . . carry out their duties to maintain and disclose the relevant information in their possession in good faith."  *Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 630–31 (2d Cir. 2018).  And it is well-recognized that, "Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."  *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).  I will not hesitate to impose sanctions should any party in this case fail to comply with its discovery obligations or the Court's discovery directives.

The Clerk of Court is directed to terminate the motions at Dkt. Nos. 129, 131 and to remove them from the court's list of open motions.

This constitutes the decision and order of the Court.  It is a written decision.[1]


Dated: October 16, 2025


_____

U.S.D.J.



BY ECF TO ALL COUNSEL

---

[1] On October 14, 15 and 16, 2025, the court received letters from MOAC and the Trust, Dkt Nos. 164–67, that I believe this opinion addresses.  I certainly do not need to hold a conference to resolve these needless discovery disputes.